**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BETHZAIDA DELGADO,** ) | |
| ) | |
| **NAACP-NEW ENGLAND AREA** ) | |
| **CONFERENCE,** and ) | |
| ) | |
| **NEW ENGLAND UNITED FOR JUSTICE,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | CIVIL ACTION NO. |
| **WILLIAM F. GALVIN**, ) | |
| *in his official capacity as Secretary of the* ) | _____ |
| *Commonwealth of Massachusetts,* ) | |
| ) | |
| **JUDYANN BIGBY, M.D.,** ) | **COMPLAINT** |
| *in her official capacity as Secretary of the* ) | |
| *Executive Office of Health and Human* ) | |
| *Services,* and ) | |
| ) | |
| **DANIEL J. CURLEY,** ) | |
| *in his official capacity as Commissioner of the* ) | |
| *Department of Transitional Assistance,* ) | |
| ) | |
| Defendants. ) | |

Plaintiffs Bethzaida Delgado, NAACP-New England Area Conference ("NAACP-NEAC"), and New England United for Justice ("NEU4J"), for their Complaint against defendants William F. Galvin, in his official capacity as Secretary of the Commonwealth of Massachusetts, JudyAnn Bigby, M.D., in her official capacity as Secretary of the Executive Office of Health and Human Services ("EOHHS"), and Daniel J. Curley, in his official capacity as Commissioner of the Department of Transitional Assistance ("DTA"), allege as follows.

## INTRODUCTION

The right to vote is a fundamental right.  Deprivations of that right undermine the
American democratic system of government.  Unfortunately, flawed practices and policies,
insufficient oversight and inadequate enforcement in crucial parts of Massachusetts' voter
registration system have deprived the right to vote to tens of thousands of low income
Massachusetts citizens who receive public assistance.

For several years, Massachusetts has violated the National Voter Registration Act of
1993 ("NVRA").  The NVRA was enacted, with widespread bipartisan support in Congress, to,
*inter alia*, make voter registration more widely available and accessible to the poor.  42 U.S.C. §
1973gg(b)(1).  Section 7 designates all public assistance offices as voter registration agencies.
*Id.* § 1973gg-5(a)(2)(A).  Under the NVRA, public assistance offices must provide voter
registration services with each application, recertification, renewal, or change of address.  *Id.*
§ 1973gg-5(a)(6)(A).

Specifically, the NVRA requires that all public assistance offices distribute forms that ask
their clients if they would like to register to vote and, unless the client declines to register to vote
in writing, the NVRA requires that the offices distribute voter registration applications, referred
to in Massachusetts as "affidavits," assist clients in completing the voter registration
applications, and accept completed applications and deliver them to election authorities. *Id.*
§ 1973gg-5(a)(6)(B).

Section 7 seeks to increase the number of registered voters for federal elections and to
ensure that voter registration "will be convenient and readily available [for] the poor . . . who do
not have driver's licenses and will not come into contact with the other principle [sic] place to

register under this Act [namely, motor vehicle departments]." *Id.* §1973gg(b)(1); H.R. Rep. No. 103-66, at 15 (1993) (House-Senate Conference Report).

"[N]oncompliance with section 7 [of the NVRA] means the disenfranchisement of millions of low income citizens and a widening of the gap between the registration rates of high- and low-income individuals." *Hearing on the National Voter Registration Act, Section 7:  The Challenges that Public Assistance Agencies Face*, 110th Cong., 2d Sess. 42-796 (2008) (United States Representative Zoe Lofgren, former Chairwoman of the House Subcommittee on Elections).  In fact, as a direct result of non-compliance with Section 7, thousands of low income citizens have been disenfranchised in Massachusetts.  Massachusetts' systemic violations of Section 7 -- caused by flawed practices and policies, insufficient oversight and inadequate enforcement -- have contributed to an obvious income-based "voter registration gap."  According to the United States Census Bureau's Current Population Survey released in November 2010, in 2010, only 58.2% of Massachusetts' eligible citizens living in a household with a yearly income of less than $25,000 were registered to vote, as compared to 76.9% of eligible citizens living in a household with a yearly income of more than $100,000 – a "voter registration gap" of 18.7%.  Based on the same Current Population Survey for the 2008 presidential election year, 86.1% of Massachusetts' eligible affluent citizens were registered to vote, that is, approximately 10% more than in 2010; but the voter registration rate for low income eligible citizens in 2008 was actually *lower* than in 2010, 58.1%.  These "voter registration gaps" reveal the disenfranchisement of tens of thousands of eligible low income Massachusetts citizens.

But for plaintiffs' substantial investigative efforts and commencement of this action, Massachusetts' violations may have remained hidden and unaddressed.  Data obtained from offices of the Massachusetts Department of Transitional Assistance ("DTA") suggest that, in

2011, at least 94.2% of their clients were not provided the voter registration services mandated by Section 7 of the NVRA because they purportedly identified themselves as registered voters. Given the Census Bureau's voter registration data, the statistical probability that over 94% of DTA clients are registered voters is essentially zero. DTA has recorded similarly incredible percentages of low income voter registrations every year since 2005.

Moreover, the sad truth is that Massachusetts' NVRA violations are apparently increasing over time. For example, according to statistics reported to the federal government by Massachusetts, Massachusetts public assistance offices submitted 26,984 voter registration applications in 1999-2000. Federal Election Commission, *The Impact of The National Voter Registration Act of 1993 on the Administration of Elections for Federal Office, 1999-2000* Table 2, 6 (2001). Ten years later, in 2009-2010, again according to statistics reported to the U.S. Election Assistance Commission by Massachusetts, the number of voter registration applications submitted by Massachusetts public assistance offices had decreased to 2,007 – a reduction of 92.5%. U.S. Election Assistance Commission, *2010 Election Administration & Voting Survey: Massachusetts Response* (2011) (Obtained through Public Records Request, on file with Ropes & Gray LLP).

Clearly, widespread systemic violations of the NVRA have prevented tens of thousands of eligible low income Massachusetts citizens from exercising their right to vote in federal elections. Despite these obvious violations, defendants have made little effort to investigate the violations or to develop and implement practices and policies to bring Massachusetts into compliance with the NVRA.

As a direct result of defendants' violations of Section 7 of the NVRA, eligible citizens such as plaintiff Bethzaida Delgado have been denied the opportunity to register to vote and have

- 4 -

thereby been deprived the right to vote.  To address defendants' chronic violations, organizations such as plaintiffs NEU4J and NAACP-NEAC and their members have expended and will continue to expend substantial resources to plan and execute voter registration initiatives that target public assistance clients.  But for defendants' violations, organizations such as plaintiffs NEU4J and NAACP-NEAC would not have diverted their limited resources to such voter registration initiatives.

Plaintiffs bring this action for declaratory and injunctive relief, asking this Court to order defendants to comply with Section 7 of the NVRA.  Because the deadline to register for the 2012 federal election is October 17, 2012, plaintiffs seek preliminary injunctive relief, asking this Court to order defendants to immediately develop and implement remedial practices and policies to ensure compliance with the NVRA well in advance of that registration deadline.

Simply stated, plaintiffs ask this Court to order defendants to meet their responsibilities under the NVRA and to assist tens of thousands of eligible but unregistered low income Massachusetts citizens in registering to vote so that they can exercise one of their most fundamental rights and participate in our democratic system.

## JURISDICTION AND VENUE

(1)     This action is brought pursuant to 42 U.S.C. § 1973gg-9(b).

(2)     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

(3)     This Court has personal jurisdiction over each defendant because each is a citizen of the Commonwealth of Massachusetts.

(4)     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and the principal place of business of each defendant is in this district.

(5)     As described in detail below, an actual and justiciable controversy exists between plaintiffs and defendants.

<u>**PARTIES**</u>

(6)     Plaintiff Bethzaida Delgado is a Massachusetts citizen who resides at 277 East Merrimack Street, Lowell, Massachusetts.  Ms. Delgado is eligible to register to vote in Massachusetts.  She has not been registered to vote at her current address nor at any other address in Massachusetts.  Ms. Delgado receives Supplemental Nutrition Assistance Program ("SNAP") benefits, which are administered by the DTA.

Ms. Delgado also receives Medicaid, which is implemented in Massachusetts through the MassHealth program ("MassHealth").  MassHealth is administered by the EOHHS; applications for MassHealth benefits, as well as assistance related to the receipt of benefits, is available at, among others, DTA offices.  Ms. Delgado first applied for MassHealth benefits from the DTA office located at 131 Davidson Street, Lowell, Massachusetts.  She has subsequently renewed or recertified her MassHealth benefits through the MassHealth enrollment center located at 367 East Street, Tewksbury, Massachusetts.

On June 24, 2011, Ms. Delgado visited the DTA office located at 131 Davidson Street, Lowell, Massachusetts, to recertify her eligibility for SNAP benefits.  During that visit, she was not offered the opportunity to register to vote or to change her voter registration address.

Ms. Delgado has been receiving SNAP and MassHealth benefits for the past ten years and has previously received cash assistance.  She cannot recall ever being offered the

- 6 -

opportunity to register to vote during a visit to a DTA office or through any of her interactions with MassHealth enrollment centers.

(7)    Plaintiff NAACP-NEAC is an organization under the umbrella of the National Association for the Advancement of Colored People, with its principal place of business in Boston, Massachusetts.   NAACP-NEAC operates through more than twenty Units – Branches, College Chapters, and Youth Councils – including at least fifteen Branches located throughout Massachusetts.  It provides services to more than two thousand members, including members who have applied and/or may apply for, and/or receive and/or may receive, public assistance benefits in Massachusetts, including SNAP, Transitional Aid to Families with Dependent Children ("TAFDC"), Emergency Aid to the Elderly, Disabled, and Children ("EAEDC"), and MassHealth.

Voter registration and education are core components of NAACP-NEAC's mission and are central to the accomplishment of its objectives.  Among other things, NAACP-NEAC Branches encourage voter registration and participation in federal and other elections, especially among people of color, and disenfranchised and low income citizens, and have expended, and continue to expend, substantial resources conducting voter registration drives throughout Massachusetts.  NAACP-NEAC's voter registration efforts target voters in low income neighborhoods, including registration of persons who apply for and/or receive public assistance benefits.  In 2011, as one of its highest priorities, NAACP-NEAC commenced a campaign in Massachusetts named "This is My Vote," with voter registration, voter education, and get-out-the-vote activities planned throughout 2011 and 2012.

As a direct result of defendants' violations of Section 7 of the NVRA, NAACP-NEAC has sent volunteers to assist people with voter registration and voter education who should have

been offered those services by defendants.  If defendants provided NVRA-mandated voter registration services, NAACP-NEAC could reallocate its volunteers to other activities, including issue-based campaigns, youth programs, collaborative community actions with other organizations, voter protection efforts, and large-scale voter registration drives that broadly target many persons, including persons that Section 7 of the NVRA is not designed to cover.

(8)      Plaintiff New England United for Justice ("NEU4J") is a nonprofit membership-based community organization with its principal place of business at 196 Adams Street, Boston, Massachusetts.  NEU4J has more than 280 members, including members who have applied for and/or will apply for, and/or receive and/or will receive public assistance benefits in Massachusetts, including SNAP, TAFDC, EAEDC, and MassHealth.  NEU4J encourages voter registration and participation in federal, state, and city elections, which are core components of its mission and central to the accomplishment of its objectives, particularly among citizens of color and low income citizens.  NEU4J has expended, and continues to expend, substantial resources in conducting voter registration drives throughout Boston.  Its current voter registration efforts target voters in low income neighborhoods, including the registration of persons who apply for and/or receive public assistance benefits.

In addition, after completing interviews of individuals visiting DTA offices, which revealed that numerous DTA clients were not receiving NVRA-mandated voter registration forms and assistance, NEU4J has decided that it will devote additional resources to register DTA clients to vote.  These efforts divert NEU4J's limited resources from other activities, including voter mobilization and get-out-the-vote efforts, door-to-door canvassing, candidate forums, neighborhood development efforts, community actions with other organizations, leadership trainings, and voter registration drives in areas to register persons the NVRA is not designed to

cover.  This diversion of resources would not be necessary if defendants complied with the voter

registration assistance requirements mandated by the NVRA.

(9)     Defendant William F. Galvin is the Secretary of the Commonwealth of

Massachusetts.  Mr. Galvin is the chief election official in Massachusetts and is responsible for

conducting and overseeing federal elections.  In his official capacity, among other things, Mr.

Galvin promulgates regulations; issues directives and advisories regarding procedures for

conducting federal elections; prescribes voter registration forms and makes them available for

distribution; establishes and maintains statewide qualified voter files; develops and implements

rules, practices and policies to enforce laws governing federal elections; investigates, or causes

to be investigated, compliance with governing election laws; and is responsible for ensuring

compliance with the NVRA.  He is the "chief election official" responsible for coordination of

Massachusetts' responsibilities under the NVRA.

(10)     Defendant JudyAnn Bigby, M.D., is the Secretary of the Executive Office of

Health and Human Services ("EOHHS").  The EOHHS administers the following public

assistance programs:  SNAP, EAEDC, MassHealth, and TAFDC (which receives funding from

the federal Temporary Assistance for Needy Families ("TANF") block grant program).  Any

state office that administers these programs must comply with the requirements of the NVRA.

Pursuant to Massachusetts law, EOHHS is the "single state agency" responsible for the

administration of MassHealth.  *See* M.G.L.A. 118E § 1.

(11)     Defendant Daniel J. Curley is the Commissioner of the Department of

Transitional Assistance ("DTA"), which Massachusetts has designated as a voter registration

agency pursuant to the NVRA.  The DTA, a Department within the EOHHS, administers SNAP,

EAEDC, MassHealth, and TAFDC.  In its administration of these programs, DTA must comply

- 9 -

with the requirements of the NVRA. In addition, on information and belief, pursuant to

Massachusetts law, DTA is the "single state agency" responsible for the administration of SNAP,

EAEDC, and TAFDC.  *See* 106 CMR 701.100.

## FACTUAL ALLEGATIONS

### National Voter Registration Act of 1993

(12)    The National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg *et*

*seq.*, has as its principal purpose "establish[ing] procedures that will increase the number of

eligible citizens who register to vote in elections for Federal office."  *Id.* § 1973gg(b)(1).

(13)    In furtherance of that principal purpose, the NVRA mandates, among other things,

that "each state shall designate as voter registration agencies -- (A) all offices in the state that

provide public assistance."  42 U.S.C. § 1973gg-5(a)(2).

(14)    At each voter registration agency, Section 7 of the NVRA requires that "the

following services shall be made available:

(i)     Distribution of mail voter registration application forms . . .

(ii)    Assistance to applicants in completing voter registration application forms, unless

the applicant refuses such assistance.

(iii)   Acceptance of completed voter registration application forms for transmittal to the

appropriate State election official."

42 U.S.C. § 1973gg-5(a)(4)(A); *id.* § 1973gg-5(a)(6).  Completed voter registration applications

must be "transmitted to the appropriate State election official not later than 10 days after the date

of acceptance," *id.* § 1973gg-5(d)(1), or within 5 days, if accepted "5 days before the last day for

registration to vote in an election," *id.* § 1973gg-5(d)(2).   These services must be offered by all

public assistance offices "with each application for . . . [public] assistance, and with each

- 10 -

recertification, renewal, or change of address form relating to . . . [public] assistance." *Id.* § 1973gg-5(a)(6).

(15)    Section 7 of the NVRA also requires all public assistance offices to distribute with each application for services, and with each recertification or renewal, and with each change of address form, a voter preference form, sometimes called a "declination form."  The voter preference form provides specific information to clients regarding the voter registration process and asks, "[i]f you are not registered to vote where you live now, would you like to apply to register to vote here today?"  The specific information on the voter preference form includes, for example, an explanation that the decision to register to vote will not affect eligibility for public assistance or the amount of benefits.  *Id.* § 1973gg-5(a)(6)(B)(ii).

(16)    The public assistance agency must provide that client with "the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance." *Id.* § 1973gg-5(a)(6)(C).

(17)    The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA.  42 U.S.C. § 1973gg-8.  As previously noted, in Massachusetts, the "chief State election official" is defendant Galvin, the Secretary of the Commonwealth.

(18)    The NVRA creates a private right of action for "a person who is aggrieved by a violation" of the NVRA.  42 U.S.C. § 1973gg-9(b)(1).  The NVRA requires that, at least 90 days prior to bringing an action to enforce the NVRA, an aggrieved person must give written notice to the "chief State election official" to identify the violation(s) and to provide the State with an opportunity to cure the violation(s) prior to the commencement of an action.

- 11 -

**Massachusetts Voter Registration Regulations**

(19)     Massachusetts has adopted regulations (950 CMR 57) to implement the NVRA.

(20)     950 CMR 57 states, in part, that it "implements the federal National Voter Registration Act, 42 U.S.C. 1973gg to 1973gg-10." 950 CMR 57.01. It also states that one of the purposes of the regulations is to "increase the number of eligible citizens who register to vote." *Id.*

(21)     950 CMR 57.05 requires the Commonwealth to provide voter registration services at designated voter registration agencies. A voter registration agency is defined to include agencies that administer or provide services under the Food Stamp (*i.e.*, SNAP), Medicaid (*i.e.*, MassHealth), EAEDC, and Aid to Families with Dependent Children (*i.e.*, TAFDC) programs. 950 CMR 57.02.

(22)     950 CMR 57.05 also requires the Commonwealth to facilitate voter registration. For example, it states that the Secretary of the Commonwealth "shall prepare blank forms for affidavits of voter registration and shall supply sufficient quantities of such forms to each voter registration agency." 950 CMR 57.05(1)(a). Further, the Secretary "shall prepare voter registration declination forms and shall supply such forms in quantities the state secretary deems sufficient." 950 CMR 57.05(1)(b).

(23)     A voter registration application, or "affidavit," must be distributed with each application for service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance. 950 CMR 57.05(2)(b). Whether an applicant for services or assistance declines to register to vote, or chooses to register to vote, a voter preference form, or "declination form," must be signed by the applicant and retained by the voter registration agency. 950 CMR 57.05(2)(c), (d). Further, the agency "shall provide the registrant

- 12 -

with the same level of assistance in filling out the voter registration [application] as is provided by the agency in completing its own forms." 950 CMR 57.05(2)(f).

(24)    Each voter registration agency must "mail or deliver the original completed affidavit of voter registration to the board of registrars of voters of the city or town where the registrant resides within five days after it is completed by the registrant at the agency." 950 CMR 57.05(3)(a).

**Failure to Offer Voter Registration Opportunities to Public Assistance Agency Clients.**

(25)    Massachusetts must comply with the requirements of the NVRA.

(26)    Defendant Galvin, as Secretary of the Commonwealth, is the chief election official responsible for ensuring Massachusetts' compliance with the NVRA.  Among other things, Mr. Galvin is responsible for ensuring that voter registration agencies, including offices through which persons apply for, recertify, renew, or change their addresses for public assistance benefits, including SNAP, TAFDC, EAEDC, and MassHealth, provide the voter registration services mandated by Section 7 of the NVRA.

(27)    EOHHS and DTA are state agencies responsible for the administration of public assistance in Massachusetts, including, but not limited to, the administration of SNAP, TAFDC, EAEDC, and MassHealth.  DTA and EOHHS are voter registration agencies under Section 7 of the NVRA, as recognized by the implementing Code of Massachusetts Regulations, 950 CMR 57.02(1)(b), because they administer or provide services under the SNAP, MassHealth, EAEDC and TAFDC programs.  Defendant Bigby, as Secretary of EOHHS, and defendant Curley, as Commissioner of DTA, are State officials responsible for ensuring that voter registration materials and services mandated by Section 7 of the NVRA are made available through the public assistance programs offered by EOHHS and DTA, respectively.

(28)     Defendants have violated Section 7 of the NVRA by failing to provide persons

who apply, recertify, renew, or change their addresses in connection with public assistance

benefits with a voter registration application, a voter preference form, and assistance in

completing a voter registration application.  These failures also violate Massachusetts regulations

implementing the NVRA.  950 CMR 57.

(29)     United States Census Bureau data strongly suggests that Massachusetts public

assistance offices are not performing their voter registration obligations under the NVRA.

According to the November 2008 United States Census Bureau Current Population Survey, in

2008, only 58.1% of low income eligible Massachusetts citizens were registered to vote

compared to 86.1% affluent Massachusetts eligible citizens, an income-based "voter registration

gap" of 18%.  In 2010, according to the November 2010 edition of the same Survey, 58.2% of

low income eligible Massachusetts citizens were registered to vote compared to 76.9% affluent

Massachusetts eligible citizens, an income-based "voter registration gap" of over 18%.

(30)     Available reports of NVRA public assistance office voter registration data do not

indicate that Massachusetts public assistance offices comply with NVRA requirements.

Massachusetts is required, pursuant to federal regulations, *see, e.g.*, 11 C.F.R. § 9428.7, to report

voter registration data, including numbers of voter registration applications submitted by voter

registration agencies, to the U.S. Election Assistance Commission ("EAC").  Massachusetts

submitted certain information to the EAC in 2010.  However, information regarding voter

registration applications, including those from public assistance offices, was submitted in an

unusable format and was therefore not included in the EAC's annual NVRA reports.  U.S.

Election Assistance Commission, *The Impact of The National Voter Registration Act of 1993 on*

*the Administration of Elections for Federal Office, 2009-2010* 39 (2011).  More specifically,

Massachusetts did not aggregate the number of voter registration applications received from public assistance offices, making it prohibitively burdensome for the EAC to analyze the information submitted by Massachusetts.  U.S. Election Assistance Commission, *2010 Election Administration & Voting Survey: Massachusetts Response* (2011) (Obtained through Public Records Request, on file with Ropes & Gray LLP).  As a result, the EAC's 2010 annual report to Congress did not include information regarding Massachusetts' compliance with Section 7.  U.S. Election Assistance Commission, *The Impact of The National Voter Registration Act of 1993 on the Administration of Elections for Federal Office, 2009-2010* (2011).

(31)     Moreover, data produced by the DTA itself, in response to a Public Records Act Request by plaintiffs' counsel, confirm that public assistance offices are not providing voter registration services required by the NVRA.  A comparison of the number of persons registering to vote through DTA offices with the number of persons receiving SNAP benefits demonstrates that those offices are not complying with the requirements of the NVRA.  As indicated in the chart below, for the past seven years, significantly fewer than 1% of the DTA's SNAP clients have submitted voter registration applications to DTA offices.

30555700_6

| Year | Voter Registration ("VR") Applications Submitted | SNAP Applications Submitted | Ratio of VR to SNAP Apps (%) |
|---|---|---|---|
| 2005 | 748 | 214,855 | 0.34% |
| 2006 | 871 | 157, 646 | 0.55% |
| 2007 | 901 | 168, 316 | 0.55% |
| 2008 | 1252 | 219,592 | 0.57% |
| 2009 | 764 | 269,022 | 0.28% |
| 2010 | 516 | 239,795 | 0.22% |
| 2011 | 570 | 240,149 | 0.24% |

(32)     The DTA's non-compliance with the NVRA is also shown by its own computerized client survey records.  For the past seven years (2005-2011), DTA has utilized a computerized process, known as BEACON, to process benefits-related transactions.  As designed and intended, under BEACON, DTA personnel cannot complete a client's application, recertification or renewal, or change of address, without inputting the answer to the question, is "everyone 18 or older in [the] Assistance Unit who is a U.S. citizen and a Massachusetts resident currently registered to vote at your current address,"[1] and, if the answer to that question is that an eligible resident within the Assistance Unit is not registered to vote, without also inputting the answer to whether any such person wishes to register to vote.

---

[1] Upon information and belief, DTA recently reworded this question to ask whether there is "anyone 18 or older who is currently NOT registered to vote at your current address."  Upon information and belief, DTA has made no other changes to the BEACON computerized process.

There is a "hard stop" step in the computer program which must be completed before the computerized process will proceed.  For each of the past seven years, according to data produced in response to the Public Records Act Request, BEACON has reported that over 94% of all DTA clients have answered that everyone 18 or older in their home is registered to vote.  In other words, notwithstanding the fact that, according to the United States Census Bureau 2010 survey, only 58.2% of eligible Massachusetts low income citizens were registered to vote, the BEACON DTA data suggest that over 94% of DTA clients are registered voters.  Given the Census Bureau data, the statistical probability that over 94% of DTA clients were registered voters is essentially zero.

(33)    Upon information and belief, it is far more likely that DTA personnel have proceeded past the "hard stop" step in the BEACON computer program by inputting an answer in response to the voter registration question without actually asking the client the voter registration question; by answering that a client is already registered when he or she fails to answer the question; and/or by failing to explain the voter registration question when "assisting" a client in completing benefits forms.

(34)    The same DTA BEACON data also indicate that DTA offices are not distributing voter registration applications or voter preference forms to all clients, as required by the NVRA. Public assistance agencies are required to distribute a voter preference form with each application for service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance. 42 U.S.C. § 1973gg-5(a)(6)(A). Public assistance agencies are further required to distribute a voter registration application "unless the applicant, in writing, declines to register to vote." *Id.* at § 1973gg-5(a)(6).  DTA's data show that when the first BEACON question response is inputted as "everyone in the client's home is already

registered to vote," not only is no voter registration application distributed, but also no voter preference form is completed.  In other words, based on the DTA data produced, DTA personnel have failed to distribute voter registration applications to 94% of its clients even though no voter preference form containing a written declination was completed.

(35)     DTA is further required by the NVRA, as implemented by 950 CMR 57.05(2), to preserve voter preference forms.  Specifically, "[i]f the applicant declines to register to vote, the declination form shall be signed by the applicant, and retained by the registration agency."  950 CMR 57.05(2)(c).  The suspect nature of the DTA's BEACON system and DTA's apparent non-compliance with NVRA requirements are further evidenced by the revelation that, according to DTA 2011 records, not a single DTA client who had responded that he or she was already registered to vote completed a voter preference form that was retained by a DTA office.

(36)     Between May and December 2011, NEU4J visited DTA offices in Boston, Holyoke, Lawrence, Lowell, Springfield, Worcester, Pittsfield, and Fitchburg, and spoke to office personnel, as well as individuals leaving those offices who had visited to apply for, recertify, renew, or change their address in connection with SNAP, EAEDC, TAFDC, or MassHealth benefits.  Information compiled during these visits confirm widespread violations of Section 7 of the NVRA.  Specific violations at DTA offices include:

(i)     *Failure to offer voter registration opportunities.*  Of the 174 public assistance clients interviewed, 129, or 73%, reported that they received no offer of voter registration in any manner.  They did not see any voter registration question on any DTA forms; they were not asked by any DTA personnel about voter registration; they were not offered a voter registration application; and they were given no assistance whatsoever in registering to vote.

(ii)    *Failure to distribute voter registration applications.*  As previously noted, the

NVRA requires public assistance offices to distribute voter registration

applications to each client unless he or she completes a written declination of

his or her right to register to vote.  42 U.S.C. § 1973gg-5(a)(6)(A).  Similarly,

pursuant to Massachusetts regulation, 950 CMR 57.05(2)(c), "[i]f the

applicant declines to register to vote, the declination form shall be signed by

the applicant, and retained by the registration agency."  By definition, a failure

to provide a response to the written voter preference form is *not* a statement

"in writing" that satisfies an agency's obligation to provide a voter registration

application.  Of the 146 interviewed clients who did not provide a response to

the NVRA-mandated voter registration question – either because they did not

see the question or because they left it blank – 140 (approximately 95%) were

not provided with a voter registration application.

(iii)   *Failure to keep voter registration applications and materials in supply and*

*generally available*.  The failure to stock voter registration materials also

suggests broader non-compliance with Section 7 of the NVRA and 950 CMR

57.05(1)(a) and (b).  For example, although the Elections Director of the

Secretary of the Commonwealth has asserted (in a letter to plaintiffs' counsel

dated March 6, 2012) that the Secretary of the Commonwealth has always

made posters regarding violations of election laws/penalties and "register to

vote here" signs available to all public assistance offices, no signs or posters

were observed at any of the DTA offices visited.  Similarly, although the

Secretary has purportedly always made voter registration applications and

mail-in voter registration applications available to all public assistance offices in multiple languages, in only one DTA office of the nine visited were voter registration applications – in any language – observed at the office intake counter.

(37)   The NVRA (42 U.S.C. § 1973gg-5(a)(6)) requires that public assistance offices designated as voter registration agencies "distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form," a voter registration application and a voter preference form.  Significantly, "Virtual Gateway," an online portal operated by the EOHHS that provides information about a broad range of social services for low income persons, including food stamps and Medicaid, offers no voter registration information.  Because a Massachusetts citizen can apply for public assistance through "Virtual Gateway," it triggers the requirements of the NVRA.  And, upon information and belief, while this online registration system requests an applicant's personal information (including age and citizenship status), it does not ask about voter eligibility or registration status.  Voter registration is neither available through "Virtual Gateway" menu options, nor is it listed among its index of available services.  Defendants' failure to provide voter registration applications and voter preference forms through "Virtual Gateway" is symptomatic of Massachusetts' systemic non-compliance with the NVRA.

(38)   Defendants' widespread violations of the NVRA and disregard for voter registration rights of public assistance clients is remarkable given the Massachusetts Constitution's guarantee of the right to vote to every citizen of the Commonwealth of Massachusetts.  Mass. Const. pt. 1, art. IX. The Massachusetts Supreme Judicial Court has long recognized that being left off voter registration rolls deprives one of the right to vote and is a

violation of the Massachusetts Constitution. *Santana v. Registrars of Voters of Worcester*, 384
Mass. 487, 492 (1981); *Lincoln v. Hapgood*, 11 Mass. 350, 355 (1814). Defendants' failure to
comply with the requirements of the NVRA prevents tens of thousands of low income
Massachusetts citizens from registering to vote, and so prevents them from exercising their right
to vote.

(39)     On December 8, 2011, a letter was sent to defendant Galvin, on behalf of "New
England United for Justice, persons eligible to register to vote that it represents, and others
similarly situated," to "provide written notice of the violation [of Section 7 of the NVRA] to the
chief election official of the State," as required by the NVRA. 42 U.S.C. § 1973gg-9. The
notice stated that, unless Massachusetts implemented a plan to remedy the violations of the
NVRA within 90 days, NEU4J would commence litigation. (A copy of the December 8, 2011
notice letter is attached hereto as **Exhibit A**.) Defendants Bigby and Curley were sent a copy of
the notice on the same day. The violations of the NVRA described in the notice letter have not
been remedied.

(40)     On February 9, 2012, representatives of plaintiffs met with representatives from,
among others, the offices of the Secretary of the Commonwealth, EOHHS, and DTA to discuss
Massachusetts' NVRA violations. At the conclusion of that meeting, all attendees agreed to
reconvene for additional discussions two weeks later, on February 22, 2012. On February 17,
2012, however, defendants' representatives unilaterally cancelled the second meeting and
refused to conduct any further discussions before the 90-day deadline, opting instead to provide a
written response to the December 8, 2011 notice letter.

(41)     On March 6, 2012, the Elections Director of the Secretary of the Commonwealth
sent a response letter to plaintiffs' representatives. That letter describes a single change in policy

by the Secretary.  Previously, public assistance offices were directed not to provide a voter

registration application to any client who left the voter registration question on the voter

preference form blank, a clear violation of NVRA requirements.  The Elections Director's letter

states that, going forward, public assistance offices would be directed to provide a voter

registration application to any client who does not provide a written declination of the

opportunity to register to vote – as has always been required by the NVRA.  While this change in

policy, reportedly to be accompanied by planned updates to the "Agency Voter Registration

Workbook" and the "Agency Script," is clearly necessary to comply with the NVRA, the March

6, 2012 letter is silent regarding how the policy change would be implemented or enforced.

        The Elections Director's letter states that the policy change was communicated to public

assistance agencies in March of 2012.  However, such a communication, standing alone, does

nothing to ensure that the policy change is implemented by agency personnel.  Given the

historical policies and practices of these agencies to provide a voter registration application if

and only if a client answered the voter registration question affirmatively – that is, specifically

stating in writing on the voter preference form that he or she would like to register to vote – the

Secretary's change in policy – unaccompanied by any implementation or enforcement

procedures – does not remedy Massachusetts' violations of Section 7 of the NVRA.

        (42)    The March 6, 2012 letter fails to mention any other change in policy or procedure

to ensure that voter registration applications and materials would be distributed and displayed; or

to ensure that voter registration services would be provided to public assistance agency clients.

Throughout her letter, the Elections Director simply summarizes requirements of the NVRA,

without offering any evidence that the voter registration agencies have adopted practices and

policies that satisfy those requirements.  By way of example only, the Elections Director writes

- 22 -

that "[p]ursuant to the NVRA, as well as state law and regulations promulgated by the Secretary

of the Commonwealth . . . the declination form must be distributed with each application for

service or assistance, recertification, renewal, or change of address."  That is indeed a correct

statement of federal and state law.  However, there is no evidence that, for example, supervision

and oversight of compliance with this legal requirement has been initiated, or that enforcement

procedures have been implemented.  Similarly, the Elections Director writes that "[t]he same

level of assistance must be provided in completing the voter registration form as is provided by

the agency in completing its own forms, unless the registrant refuses assistance."  This is

essentially a quotation of 950 CMR § 57.05(2)(e).  However, the letter provides no information

regarding whether this legal requirement has been followed; overseen through regular

supervision; or enforced through compliance procedures.  Such empty recitations of law appear

throughout the response letter.

(43)    In addition, many of the practices described in the March 6, 2012 letter have been

required throughout the many years of Massachusetts' violations of Section 7 of the NVRA.

While certain of these practices may be necessary to ensure compliance with the requirements of

the NVRA, they have proven to be woefully inadequate without additional policies, practices and

procedures.  For example, the Elections Director notes that, in terms of staffing, Massachusetts

has "maintained a NVRA coordinator in the Elections Division" since the NVRA's enactment in

1993.  The NVRA coordinator has purportedly "[c]onsistently . . . met with agency contacts to

provide information and training on the NVRA and to address any issues that arise."  In addition,

according to the Elections Director, the Secretary's office "has always made itself available to

conduct trainings for any agency."  While laudable, these practices alone have obviously not

prevented Massachusetts' systemic violations of the NVRA.  There is no reason to believe that

they will be effective in the future.  For example, there is no commitment or directive that there

will be regular meetings with agency officials; that such meetings will focus on affirmative steps

to achieve compliance with the NVRA; or that procedures will be developed and implemented to

oversee and enforce compliance with the NVRA.  Similarly, although the Secretary's Office

claims to be preparing a PowerPoint training module that will be made available to all public

assistance agencies, there is no explanation regarding what NVRA content would be covered; no

explanation of when or how the module would be made available or distributed to agencies; and

no explanation of how the module would be incorporated into the agencies' regular training.

(44)    With respect to DTA in particular, the March 6, 2012 response letter again cites to

existing and demonstrably inadequate practices.  For example, the Elections Director notes that

DTA "has had and continues to have a designated NVRA Coordinator on staff."  While this is a

necessary requirement to ensure compliance with the NVRA, the letter provides no information

regarding how the Coordinator oversees NVRA compliance or addresses evidence of non-

compliance.

DTA's BEACON computerized system is yet another example of an obviously

inadequate part of a compliance system.  The March 6, 2012 letter notes that BEACON "requires

that all the appropriate voter registration questions be asked for its benefit program

applicants/participants," and that the computer program includes a "hard stop" that prevents a

DTA client from completing a benefits application without first answering the NVRA-required

voter registration questions.  But, as previously noted, the incredible data reported by DTA

indicate that DTA personnel are more than likely bypassing this "hard stop" by inputting

"answers" without actually asking the clients the question.  If the voter registration questions are

not asked and voter preference forms are not distributed, any change in policy regarding voter

preference form blanks is irrelevant.  The Executive Director notes that the BEACON system can identify DTA public assistance offices with low voter registration rates, but goes no further. Without additional training, supervision, oversight and enforcement procedures to ensure that DTA personnel follow the updated BEACON Users' Guide and BEACON Help Instructions, the BEACON's "hard-stop" step and data do nothing to ensure that DTA personnel will offer and provide NVRA-mandated services.

Planned DTA changes, although desirable, are inadequate unless implemented and enforced.  For example, the Executive Director's March 6, 2012 letter states that DTA "will . . . designate a local office manager, who will see that voter registration procedures are being met, forms are available and posters posted," but offers no details, for example, on when the manager would be selected or how the manager will enforce compliance with NVRA requirements.  It similarly notes that DTA "is increasing its monitoring of NVRA activities during this election year and will work to address any issues that are identified in 2012 and subsequent years," which suggests that no additional changes are contemplated until after the 2012 federal elections.

(45)    Furthermore, even if defendants were now to adopt and fully implement the practices and policies described in the March 6, 2012 letter, much more is needed to remedy Massachusetts' woeful history of violations.  For several years, defendants have either disregarded or ignored the precipitous decline in voter registrations reported by public assistance offices.  Over the years, Massachusetts' violations of Section 7 of the NVRA have directly caused tens of thousands of eligible low income citizens to lose their right to register to vote, and, as a direct result, they have been disenfranchised.  To remedy these violations and to provide eligible low income Massachusetts citizens opportunities to exercise their right to

register to vote in time for the fast-approaching 2012 federal election, preliminary injunctive relief is needed.

**Plaintiff Bethzaida Delgado Is Denied the Opportunity to Register to Vote.**

(46)     Plaintiff Bethzaida Delgado is 35 years old and has lived in Massachusetts for over 12 years.  Ms. Delgado is a United States citizen.  She satisfies all qualifications to register to vote in Massachusetts.

(47)     Ms. Delgado is not registered to vote at her current address, and would like to register to vote at her current address.

(48)     Ms. Delgado has received SNAP and MassHealth benefits since approximately 2002 and received cash assistance in 2006 and 2007 following an automobile accident.  In connection with her application and receipt of public assistance, she has visited the DTA office at 131 Davidson Street, Lowell, Massachusetts, many times to recertify or to renew her benefits. She first applied for MassHealth benefits at the Lowell DTA office.  Ms. Delgado has subsequently recertified or renewed her MassHealth benefits through the MassHealth enrollment center located at 367 East Street, Tewksbury, Massachusetts.

(49)     Ms. Delgado visited the DTA office at 131 Davidson Street, in Lowell, Massachusetts, on June 24, 2011, to recertify her SNAP benefits.  She was not offered the opportunity to register to vote at any time during her visit; nor was she offered a voter registration application.  Ms. Delgado will not visit the office again until she is required to do so by DTA.

(50)     Despite her numerous interactions with DTA offices and MassHealth enrollment centers over the past 10 years, including her most recent visit to the Lowell DTA office, Ms. Delgado does not recall ever being offered the opportunity to register to vote or being informed

that she could obtain voter registration applications and register to vote through DTA offices or
MassHealth enrollment centers.

(51)     Had Ms. Delgado been advised that she could register to vote, or been offered
opportunities to register to vote through a DTA office or MassHealth enrollment center, Ms.
Delgado would have done so and she would have been able to vote.

### NAACP-New England Area Conference Voter Registration Efforts.

(52)     NAACP-NEAC seeks to achieve equality of rights among all Massachusetts
residents.  It especially encourages participation in federal and state elections by traditionally
underrepresented groups.  Massachusetts' continuing widespread violations of Section 7 of the
NVRA have frustrated NAACP-NEAC's efforts, as many low income and citizens of color have
been deprived of opportunities to register to vote at DTA offices.  But for defendants' violations
of the NVRA, NAACP-NEAC volunteers and members would not have expended as much of
their limited resources assisting these Massachusetts citizens with voter registration.

(53)     NAACP-NEAC Branches organize and conduct numerous voter registration
drives throughout Massachusetts.  They devote substantial resources to voter registration drives
every year.  In promoting these drives in communities, NAACP-NEAC organizers target, among
others, families who live in low income housing.  If public assistance offices throughout
Massachusetts were complying with the requirements of the NVRA, NAACP-NEAC would
expend fewer resources on voter registration drives in communities where DTA clients should be
offered voter registration opportunities at DTA offices.  But for defendants' violations of Section
7 of the NVRA, NAACP-NEAC would be able to allocate substantial resources to other
activities central to its mission.  This diversion of NAACP-NEAC's limited resources will
continue unless and until defendants' violations are remedied.

**New England United for Justice Voter Registration Efforts.**

(54)    NEU4J supports the civil rights efforts of low income Massachusetts residents, especially within those communities where its members reside, with a specific focus on the communities in Dorchester, Roxbury, and Mattapan.  NEU4J targets low income residential areas where voter turnout and participation are historically low, and educates and empowers residents by assisting them in registering to vote and by encouraging them to participate in federal and state elections.  NEU4J efforts include voter outreach, such as door-to-door canvassing and telephone drives, which depend on volunteer participation.  NEU4J has also partnered with other Massachusetts organizations, such as the NAACP-NEAC and MassVote, in large-scale outreach programs.  As a direct result of defendants' violations of Section 7 of the NVRA, NEU4J and its members have expended and, unless and until defendants' violations of the NVRA are remedied, will continue to expend substantial resources to assist public assistance applicants and recipients to register to vote.  By way of example only, upon learning from clients visiting DTA offices that they were not being offered NVRA-mandated voter registration services, NEU4J began developing plans to register voters visiting those offices.  These plans diverted NEU4J resources that would otherwise be expended on different voter education and voter registration activities.  The diversions of NEU4J and its members' resources will continue unless and until defendants' violations of Section 7 of the NVRA are remedied.

(55)    NEU4J is also actively involved in many community improvement initiatives targeting local, state, and federal issues facing low income families, including paid sick leave, Social Security and Medicaid benefits, tax reform and improving local city, state, and federal budget deficit efforts.  As a direct result of defendants' NVRA violations, NEU4J has diverted, and will continue to divert, its limited resources away from these other initiatives.

## CLAIMS FOR RELIEF

### Violation of Section 7 of the National Voter Registration Act of 1993

(56)    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

(57)    As a consequence of their past and continuing failures to provide voter registration materials and services required by Section 7, defendants have violated and continue to violate the NVRA.

(58)    Plaintiffs are aggrieved by defendants' past and continuing violations of the NVRA, and have no adequate remedy at law.  Declaratory and injunctive relief are required to remedy defendants' past and continuing violations of the NVRA and to ensure defendants' future compliance with the NVRA.


## PRAYERS FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and enter an order:

(i)    Declaring, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1973gg-9(b)(2), that defendants have violated Section 7 of the NVRA, 42 U.S.C. § 1973gg-5, by failing to provide the NVRA-required voter registration materials and services through public assistance offices, including EOHHS and DTA;

(ii)    Preliminarily and permanently enjoining defendants, their officers, agents servants, employees and successors in office, and all persons in active concert or participation with them, from failing to develop, implement and enforce practices and policies to ensure compliance with Section 7 of the NVRA, 42 U.S.C. § 1973gg-5;

(iii)    Directing defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to take all actions necessary to remedy the past and continuing violations of Section 7 of the NVRA, including, without limitation, ensuring that all persons affected by defendants' violations of Section 7 of the NVRA are provided opportunities to register to vote or to change their voter registration addresses to enable them to vote in the 2012 federal election;

(iv)    Directing defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to take all actions necessary to ensure future compliance with the requirements of Section 7 of the NVRA, 42 U.S.C. § 1973gg-5, including, without limitation, practices and policies for distribution of voter registration applications and voter preference forms; training and monitoring public assistance agency personnel to ensure that all public assistance offices are distributing a voter registration application form to each person who applies for public assistance benefits, and to each person who recertifies, renews, and/or changes an address for benefits; inquiring of all such persons, in writing, whether they want to register to vote or change their voter registration addresses, and providing to them the NVRA-required information concerning the voter registration process; assisting such persons in completing voter registration applications to the same level of assistance that is provided with other public assistance forms; accepting completed voter registration applications, and timely transmitting completed registration forms to appropriate election authorities; and retaining voter registration declination forms;

(v)    Awarding plaintiffs the costs and disbursements incurred in connection with this action, including, without limitation, their reasonable attorneys' fees, expenses, and costs, pursuant to 42 U.S.C. § 1973gg-9(c);

30555700_6

(vi)    Retaining jurisdiction over this action to ensure that defendants are complying

with any order(s) issued by this Court and with their obligations under the NVRA; and

(vii)    Awarding such additional relief as to this Court seems just and proper.

Dated:  May 15, 2012                    BETHZAIDA DELGADO, NAACP-NEW
                                        ENGLAND AREA CONFERENCE and
                                        NEW ENGLAND UNITED FOR JUSTICE

                                        By their attorneys,


                                        /s/ John Kenneth Felter
                                        John Kenneth Felter (BBO#162540)
                                        ken.felter@ropesgray.com
                                        Ming M. Zhu (BBO# 676863)
                                        ming.zhu@ropesgray.com
                                        ROPES & GRAY LLP
                                        Prudential Tower
                                        800 Boylston Street
                                        Boston, Massachusetts  02199-3600
                                        Telephone:  617-951-7000
                                        Fax:  617-951-7050

                                        Lisa Danetz (BBO #645998)
                                        Dēmos
                                        358 Chestnut Hill Avenue, Suite 303
                                        Brighton, Massachusetts  02135
                                        (617) 232-5885
                                        ldanetz@demos.org

                                        Adam Lioz (*pro hac vice pending*)
                                        Dēmos
                                        1710 Rhode Island Avenue
                                        Washington, D.C.  20036
                                        (202) 559-1543
                                        alioz@demos.org

Bob Kengle (*pro hac vice pending*)
bkengle@lawyerscommittee.org
Alejandro Reyes (*pro hac vice pending*)
areyes@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1401 New York Avenue, N.W., Suite 400
Washington, D.C.  20005
(202) 662-8321

Sarah Brannon (*pro hac vice pending*)
sbrannon@projectvote.org
Sabrina Khan (*pro hac vice pending*)
skhan@projectvote.org
Project Vote
1350 Eye Street, NW, Suite 1250
Washington, DC  20005
(202) 546-4173

Rahsaan Hall (BBO #645369)
Lawyers' Committee for Civil Rights
and Economic Justice
294 Washington St., Ste #443
Boston, MA  02108
(617)988-0608
rhall@lawyerscom.org