# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

)
)
**BETHZAIDA DELGADO, et al.,**                )
)
      **Plaintiffs,**                )
)
      **v.**                )        **Civil Action No. 12-cv-10872**
)
**WILLIAM F. GALVIN,**                )
*in his official capacity as Secretary of the*                )
*Commonwealth of Massachusetts*, **et al.,**                )
)
      **Defendants.**                )
)
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                **March 14, 2014**

## I.    Introduction

Plaintiffs Bethzaida Delgado ("Delgado"), NAACP-New England Area Conference

("NAACP") and New England United for Justice ("New England United") have sued Defendants

William F. Galvin, in his official capacity as Secretary of the Commonwealth of Massachusetts

("the Secretary"), JudyAnn Bigby, M.D. ("Bigby"), in her official capacity as (now former)

Secretary of the Executive Office of Health and Human Services ("HHS"), and Daniel J. Curley,

in his official capacity as (now former) Commissioner of the Department of Transitional

Assistance ("DTA"), alleging violations of Section 7 of the National Voter Registration Act of

1993, 42 U.S.C. § 1973gg ("NVRA").  D. 1.  The Plaintiffs have moved to amend their

complaint, D. 62, and to compel the Defendants' responses to their requests for the production of documents, D. 58.  The Defendants have moved for a judgment on the pleadings.  D. 75.

For the reasons discussed below, the Court ALLOWS the motion to amend, D. 62, ALLOWS IN PART and DENIES IN PART the motion to compel, D. 58, and DENIES the motion for judgment on the pleadings, D. 75.

## II.   Factual Allegations

The facts recited here are as alleged in the complaint, D. 1, unless otherwise noted.

### A.   Background

The National Voter Registration Act of 1993, 42 U.S.C. § 1973gg ("NVRA"), mandates that public assistance offices provide voter registration services with each application, recertification, renewal or change of address to their clientele.  42 U.S.C. § 1973gg-5(a)(6)(A); D. 1 at 2.  Enacted to make voter registration more "'convenient and readily available [for] the poor . . . who do not have driver's licenses and will not come into contact with the other principle [sic] place to register under this Act [namely, motor vehicle departments],'" D. 1 at 2–3 (citing 42 U.S.C. § 1973gg(b)(1) and quoting H.R. Conf. Rep. No. 103-66, at 15 (Apr. 28, 1993)), the NVRA requires all public assistance offices to distribute a voter preference form, which provides information to clients about the voter registration process.  Id. ¶ 15 (citing NVRA).  The agency must provide the client assistance with completing the form.  Id. ¶ 16 (citing NVRA).

The Secretary is the Commonwealth's "chief election official" for NVRA purposes.  Id. ¶ 9.  As chief election official, he is responsible for coordinating the Commonwealth's NVRA responsibilities.  Id.

The NAACP is an organization that, among other missions, encourages voter registration and election participation.  Id. ¶ 7.  Because of the Commonwealth's alleged violations of the

NVRA, described below, the NAACP has sent volunteers to assist low-income people who should have been offered voter registration and education services by the Defendants as required by the NVRA, but were not.  Id.

New England United is a non-profit community organization that encourages voter registration and election participation.  Id. ¶ 8.  After completing interviews of individuals who had visited DTA offices, New England Justice discovered that numerous DTA clients were not receiving NVRA-mandated services and has used additional resources to assist DTA clients in registering to vote.  Id.

### B.    Allegations of State-Wide Violations of the NVRA

The Plaintiffs allege that the Commonwealth of Massachusetts has failed to comply with the NVRA through "flawed practices and policies, insufficient oversight and inadequate enforcement," contributing to an income-based "voter registration gap."  Id. at 3.

Delgado, for instance, is a Massachusetts resident who is eligible to register to vote.  Id. ¶ 6.  She receives public assistance.  Id.  On June 24, 2011, Delgado visited the DTA office in Lowell to recertify her eligibility for certain benefits.  Id.  During that visit, she was not offered the opportunity to register to vote or to change her voter registration address.  Id.  She does not recall ever being offered the opportunity to register to vote at a DTA office or during any of her interactions with the MassHealth enrollment centers, where she also receives services.  Id.

Between May and December 2011, New England United representatives visited DTA offices in several Massachusetts cities.  Id. ¶ 36.  During those visits, the DTA offices failed to comply with the NVRA by failing to offer voter registration opportunities, distribute voter registration forms and keep them in supply.  Id. ¶ 36.

C.    <u>**Notice Letter and Subsequent Meeting with the Secretary**</u>

On December 8, 2011, the Plaintiffs sent a letter to the Secretary to provide written notice of alleged NVRA violations and requesting that the Commonwealth implement a plan to remedy the violations. <u>Id.</u> ¶ 39. DTA and HHS were copied on the letter. <u>Id.</u>

Representatives from the involved parties met to discuss the Plaintiffs' concerns about NVRA violations on February 9, 2012. <u>Id.</u> ¶ 40. The Plaintiffs allege that the attendees agreed to have a second meeting on February 22, 2012, but that on February 17, 2012, the Defendants' representatives cancelled the meeting and instead sent a written response to the Plaintiffs' December 8, 2011 letter. <u>Id.</u> ¶¶ 40, 41.

On March 6, 2012, the Secretary's Elections Director sent a letter to the Plaintiffs describing the "single" change to the voter registration policies that would be implemented by the Commonwealth, <u>id.</u> ¶ 41, which the Plaintiffs found to be unsatisfactory to remedy the alleged NVRA violations. <u>Id.</u> ¶ 39. This suit followed.

**III.    Procedural History**

The Plaintiffs initiated this suit on May 15, 2012, seeking declaratory and injunctive relief and asking the Court to order that the Defendants comply with Section 7 of the NVRA. D. 1. Since then, the Plaintiffs brought the instant motion to compel the Defendants' responses to their requests for production, D. 58, and moved for leave to file an amended complaint. D. 62. The Defendants have moved for a judgment on the pleadings. D. 75. After a hearing, the Court took these matters under advisement. D. 104.

**IV.    Standards of Review**

A.    <u>**Motion to Amend Complaint**</u>

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (quotations omitted).

### B.      Motion for Judgment on the Pleadings

"A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." Perez–Acevedo v. Rivero–Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43–44 (1st Cir. 2007)). "[The] complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. . . .'" Perez–Acevedo, 520 F.3d at 29 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). The Court must view the facts in the light most favorable to the Plaintiffs. Perez–Acevedo, 520 F.3d at 29 (citation omitted).

In reviewing the motion, the Court may consider, in addition to the complaint and answer, "'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" Curran, 509 F.3d at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)); NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 8 (1st Cir. 2002).

C.     **Motion to Compel**

"[Fed. R. Civ. P.] 26(b)(1) allows discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"   In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26(b)(1)).    "A party seeking broader discovery of any matter relevant to the subject matter involved in the action, is required to show good cause to support the request."   In re Subpoena to Witzel, 531 F.3d at 118 (citation and quotations omitted).   The moving party bears the burden of showing relevance.  Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005).

**V.     Discussion**

A.     **The Defendants Were Provided Adequate Pre-Suit Notice**

The Court first addresses the issue at the center of the instant motions – whether the Plaintiffs' December 8, 2011 letter was sufficiently specific such that it provided the Defendants with adequate pre-suit notice of their claims, as mandated by the NVRA.

The parties do not dispute that a pre-suit demand letter was a prerequisite to filing this lawsuit alleging NVRA violations.  42 U.S.C. § 1973gg-9(b)(1)-(2); see D. 76; D. 86; D. 66 at 8, n.7.  The parties also do not dispute that the Plaintiffs in this case sent a demand letter.  See D. 76 at 2; D. 86 at 12.  Rather, the Defendants contend only that the Court should enter judgment in their favor because the Plaintiffs' letter was not sufficiently particular; i.e., that it did not make allegations in their letter concerning the Office of Medicaid's administration of MassHealth or "remote transactions" for public assistance benefits.  D. 76 at 2.

The face of the NVRA leaves unresolved the specificity required for a  demand letter to provide adequate pre-suit notice to a state.  Likewise, there is no binding case law on this particular issue concerning the NVRA.  The Court concludes, however, after considering the

stated Congressional purpose of the notice provision, the NVRA's overall goal to remedy states' failures to adequately provide voting services to low-income citizens and case law, which the Court finds persuasive, examining the specificity required in a pre-suit notice letter, that the Plaintiffs' December 8, 2011 notice letter was sufficient to satisfy the NVRA's notice requirement.

### 1.   Content of the Letter

In the December 8, 2011 letter, New England United notified the Secretary that its investigation "demonstrate[d] that Massachusetts [was] systematically failing to provide the voter registration services mandated by the NVRA at its public assistance offices." D. 1-1. The letter provided a synopsis of the data the Plaintiffs analyzed, ultimately concluding that "the number of voter registration applications submitted at Massachusetts public assistance offices has decreased precipitously in the last decade." Id. The letter provided statistics regarding voter registration activity at public assistance offices and among low-income residents generally across the Commonwealth. Id.

The letter summarized the Commonwealth's purported non-compliance with the NVRA, providing field observations at DTA and WIC offices. Id. Bigby, Curley, and John Auerbach, Commissioner of the Department of Public Health, were copied on the letter. Id. Finally, the letter stated that it was serving "as a notice letter pursuant to 42 U.S.C. § 1973gg-9(b) in an attempt to obtain compliance with the public assistance provisions of the NVRA without the need for litigation. . . . We are prepared to meet with you and other state officials, at your earliest convenience, to assist in your development of a comprehensive plan for compliance." Id.

### 2.   Statutory Interpretation Supports the Conclusion that the Letter Was Sufficient

When interpreting a statute, the Court first "begins with the language of the statute." In re Hill, 562 F.3d 29, 32 (1st Cir. 2009) (citations omitted). "We assume that the words Congress chose, if not specially defined, carry their plain and ordinary meaning." Id. (citing Boivin v. Black, 225 F.3d 36, 40 (1st Cir. 2000)). "Absent ambiguity, the inquiry ends with the text of the statute." Campbell v. Washington Cnty. Technical Coll., 219 F.3d 3, 6 (1st Cir. 2000).

"Of course, plain meaning sometimes must yield if its application would bring about results that are either absurd or antithetical to Congress's discernible intent." In re Hill, 562 F.3d at 32. "In determining congressional intent, we employ the traditional tools of statutory construction, including a consideration of the language, structure, purpose, and history of the statute." Id. (citation omitted). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Mich. Dept. of Treas., 489 U.S. 803, 809 (1989).

Here, the NVRA's plain language, the discernible Congressional intent behind the notice requirement and the statutory context weigh in favor of concluding that the notice letter in this case was sufficient.

The NVRA provides for a private right of action in federal court. "A person who is aggrieved by a violation of [the NVRA] may provide written notice of the violation to the chief election official of the State involved." 42 U.S.C. § 1973gg-9(b)(1). "If the violation is not corrected within 90 days after receipt of [that] notice . . . or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." Id. § 1973gg-9(b)(2). By its express terms, the statute does not provide requirements about the contents of this "written notice of the violation."

As to congressional intent regarding this provision, the Court notes that a February 25, 1993 report from the Senate Committee on Rules and Administration observed that:

> [private civil enforcement] can encourage action to assure that a reasonable effort is undertaken to achieve its objectives in all States and, indeed, it may be essential to the success of such a program in some areas.  Private civil enforcement should be designed to assure and to encourage, to the fullest extent possible, the cooperation of local and State election officials responsible for implementation of the voter registration programs.  An essential element of an effective civil enforcement program is a requirement for notice of any complaint regarding its implementation to the appropriate election officials together with a process for its administrative resolution before legal action may be commenced.

S. Rep. No. 103-6, at 21 (1993) (recommending passage of the NVRA, which was thereafter enacted on May 20, 1993).  See P.L. 103–31, May 20, 1993, 107 Stat. 77.  It appears that the Congressional purpose of the notice requirement was to provide the state with notice of its alleged failings and then afford the state some "process" by which it can attempt to cure these alleged failings.  Such an articulation is consistent with one of the stated statutory purposes of the NVRA's implementation – to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office."  42 U.S.C. § 1973gg(b)(1).

    3.    *Case Law Further Supports a  Conclusion that the Notice Letter Was Sufficient*

When considered in concert with the discernible Congressional intent to provide notice to election officials of their allegedly improper implementation of the NVRA, relevant case law further supports the Court's conclusion that the notice letter was sufficient.  While few cases address the requisite specificity of a NVRA notice letter, courts have held that the notice requirement was designed to provide states with the opportunity to correct NVRA violations prior to allowing plaintiffs to litigate.  See, e.g., Ass'n of Cmty. Organizations for Reform Now v. Miller, 129 F.3d 833, 838 (6th Cir. 1997) (finding that the text and legislative history of the NVRA indicate that notice requirement provides "states in violation of the Act an opportunity to

attempt compliance before facing litigation"); <u>Ferrand v. Schedler</u>, No. 11-926, 2011 WL 3268700, at *6 (E.D. La. July 21, 2011) (quoting <u>Miller</u>, 129 F.3d at 838).  For one example, <u>Georgia State Conference of N.A.A.C.P. v. Kemp</u>, 841 F. Supp. 2d 1320 (N.D. Ga. 2012), involved a factual scenario similar to the facts of the instant case.  In <u>Kemp</u>, the plaintiffs' notice letter alleged that "Georgia [was] systematically failing to provide the voter registration services required under the NVRA at its public assistance offices."  841 F. Supp. 2d at 1333–34.  In concluding that the notice letter was sufficient, the <u>Kemp</u> court found compelling – as does this Court – that "[t]he defendants [] admit[ted] that they were informed of the plaintiffs' position that Georgia was failing to comply with the mandates of the NVRA in the broadest sense."  <u>Id.</u> at 1334.  The court elaborated:

> The general proposition—that Georgia was not complying with the mandates of the NVRA, especially with respect to providing voter registration services at public assistance offices and having in place policies to limit any services actually provided to in-person transactions—is set out clearly in the notice letter. The letter's statistics and investigation results simply serve as factual support for that general proposition. . . . Especially in light of statistics provided in the letter showing a precipitous decline in voter registration through Georgia public assistance offices over a 12–year period, the letter's content was adequate.

<u>Id.</u>  Similarly, in <u>Ferrand</u>, the court considered a notice letter similar to the one at issue here. Likewise, the Defendants there contested the sufficiency of the notice letter.  Specifically, the state of Louisiana contended that the plaintiffs did not satisfy the notice requirement because the letter "did not identify the specific persons aggrieved for the violations, did not detail the factual bases for the violations, and did not identify the individual offices where the violations allegedly occurred."  <u>Ferrand</u>, 2011 WL 3268700, at *6.  The court rejected these arguments, holding that the letter "provided enough detail to enable [the chief election official] to investigate the alleged violations and attempt to comply with the NVRA before facing litigation."  <u>Id.</u>  As in <u>Kemp</u>, the <u>Ferrand</u> court held that a notice letter "sent . . . to defendants informing them that Louisiana

public assistance agencies were not in compliance with the NVRA" was sufficient to satisfy the notice requirement.  Id. at *1, *6.  Although, as the Defendants note, the notice letter in Ferrand "identified the allegedly non-compliant public assistance offices," 2011 WL 3268700 at *6, the Court's focus was on whether the "letter provided enough detail to enable [the chief election officer] to investigate the alleged violations and attempt to comply with the NVRA before facing litigation."  Id.

Here, the Court agrees with the Plaintiffs that the December 8, 2011 notice letter put the Secretary of this Commonwealth, the chief election officer, on notice of allegations of widespread, state-wide NVRA violations at public assistance offices.  The letter alleged that "Massachusetts is systematically failing to provide services mandated by the NVRA at its public assistance offices."  D. 1-1.  The letter continued: "[i]n short, Massachusetts must change its facially noncompliant policy and institute procedures to ensure that frontline workers perform their federally mandated responsibility to provide voter registration services."  Id.  The letter demanded a plan from the Secretary and "other state officials" to develop a "comprehensive plan for compliance."  Id.  Further, the letter alleged that Massachusetts's noncompliance with the NVRA was also a result of "its implementation of a voter registration policy that violates [the NVRA]."  Id.  The letter claims that agency manuals – including the Voter Registration Workbook for Agencies – provided instructions for voter application distribution that did not comply with the NVRA.  Id.  As support for these allegations, the notice letter included state-wide aggregate statistics informing the Secretary that:

> we have determined that the number of voter registration applications submitted at Massachusetts public assistance offices has decreased precipitously in the last decade – from 26,984 at the peak in 1999-2000 to 2,007 in 2009-2010, a reduction of 92.5%. Indeed, this low level of voter registration activity at public assistance offices is reflected in the low voter registration rates of low-income citizens in Massachusetts.

D. 1-1.  The Court finds that these allegations provide sufficient notice that the Plaintiffs were alleging widespread and systemic problems in the Commonwealth with NVRA compliance.

In addition, to the extent the Defendants argue that the letter did not put them on notice of allegations of NVRA violations at the Office of MassHealth, the Plaintiffs not only copied the letter to the HHS Secretary, but also stated in the letter that the HHS Secretary was "responsible to ensure that local offices are implementing the law and thus are responsible for effective supervision of local offices to ensure compliance."  D. 1-1.  The Defendants have acknowledged that the Office of MassHealth, like DTA and DPH, is an entity falling under the HHS "umbrella,"  D. 66 at 5, n.5, and for the purposes of these motions, the Defendants have not disputed that MassHealth enrollment centers are public assistance offices for NVRA purposes.[1] While the Plaintiffs included examples of specific allegations of violations observed at the DTA and WIC offices in their letter, the letter does not specify that only DTA and WIC offices were in violation.  To the contrary, the letter refers to "local offices" and general "compliance with public assistance provisions of the NVRA."  D. 1-1.

To the extent the Defendants rely on Nat'l Council of La Raza v. Miller, 914 F. Supp. 2d 1201 (D. Nev. 2012), in support of their position that the notice letter was inadequate, see D. 66 at 11, the Court declines to adopt the interpretation of La Raza offered by the Defendants.  In La Raza, the plaintiffs sent a demand letter to the defendants alleging non-compliance with the NVRA and asserting that "field investigations . . . make clear that Nevada's public assistance offices still have not achieved compliance with their obligations under the NVRA."  La Raza,

---

[1] The Defendants describe the Office of MassHealth (also called the Division of Medical Assistance or the Office of Medicaid) as "an entity within [HHS] that administers Medicaid benefits in Massachusetts."  D. 66 at 2; see D. 66 at 12 ("[U]nlike in [Ferrand v.] Schedler, here the Notice Letter failed to identify "the allegedly non-compliant public assistance offices," because it did not identify MassHealth or the Office of Medicaid").

914 F. Supp. 2d at 1205, 1208.  The defendants moved to dismiss the complaint, arguing that because the field investigations occurred in December 2011, in sending their demand letter on May 10, 2012, the plaintiffs provided the defendants only 20 days of notice by filing their lawsuit on June 5, 2012.  Id. at 1206, 1208–09.  The La Raza court held that "the aggrieved person must give notice of the specific violation with the date of its occurrence, and all provisional notice requirements that relate to the violation."  Id. at 1212.  However, the La Raza decision focused primarily on the timing of the Plaintiffs' notice, as opposed to the content of the allegations contained in the notice letter.  See id. at 1211.  Even insofar as the La Raza court intended to extend its holding to all allegations of "continuous and ongoing" NVRA violations, the Court concludes that such an interpretation would frustrate the purpose of the NVRA where the Commonwealth was on notice of the breadth of its alleged violations of the NVRA.

The Defendants also argue that the "NVRA's notice requirement serves to give the state an opportunity to cure any putative violations before facing litigation, and only if the specific violation identified by a plaintiff has not been cured."  D. 76 at 9.  In support of this position, the Defendants point the Court to the fact that the Plaintiffs "opted not to sue DPH over its administration of the WIC program, based on DPH's responses to the Notice Letter."  D. 66 at 9–10.  "Had Plaintiffs mentioned MassHealth at all in its Notice Letter, or alleged any NVRA violation in the administration of MassHealth benefits—the way it did with respect to SOC, DTA, and DPH—Defendants could have involved the Office of Medicaid in discussions with Plaintiffs about possible changes, and could have informed Plaintiffs in the Response Letter of actions being taken by MassHealth with respect to NVRA issues."  D. 66 at 10.

The Court finds this argument unavailing.  As the Plaintiffs allege in their complaint, and as remains undisputed by the Defendants, on February 9, 2012, representatives of the Plaintiffs

met with representatives from the Secretary's office, HHS and DTA to discuss the Plaintiffs' concerns.  D. 1 ¶ 40.  On March 6, 2012, the Secretary's Elections Director sent a written response to the demand letter, id. ¶ 41, reflecting, according to the complaint, a single policy change that would affect public assistance offices, which the Plaintiffs deemed inadequate to resolve their concerns.  Id. ¶ 41–43.  While the Court acknowledges the Defendants' argument that were they provided more specific notice as to purported Office of MassHealth violations, they may have opted to take "some opportunity to go back and investigate areas that are subject to some changing requirements and to fully assess whether changes would be necessary or would be possible," Transcript of Motion Hearing (D. 107 at 39), as discussed above, the Plaintiffs' complaints in the notice letter applied to all public assistance offices.  As discussed above, the Defendants have not disputed that the MassHealth enrollment centers constitute public assistance offices.  See also Proposed Amended Complaint (D. 62-1 ¶ 10 (alleging that HHS administers MassHealth, a "public assistance program" and that "[a]ny state office that administers these programs must comply with the requirements of the NVRA").  That is, the Court cannot conclude, given the breadth of the allegations in the December 8, 2011 letter and the course of conduct between the parties after the letter was sent, that the Defendants were without sufficient notice regarding allegations about MassHealth or were effectively foreclosed from remedying this subset of the Plaintiffs' complaints about widespread NVRA violations.  That the Defendants offered a single remedy in response to the notice letter, chose not to pursue DPH and, only after this complaint was filed, reached agreement about certain of the remedies that Plaintiffs sought, D. 35-1, does not compel a different conclusion, particularly where the complaint contained allegations regarding MassHealth.  See D. 1 ¶¶ 6, 48–50.

In sum, the purpose of the notice requirement worked as it was intended to – after receiving notice of the widespread NVRA violations alleged by the Plaintiffs, the parties met and discussed an administrative remedy for the violations, part of which the Defendants then agreed to adopt, but which the Plaintiffs found as inadequate to the breadth of its complaints. Subsequently, the Plaintiffs sought judicial relief, as the NVRA allows.

Defendants' reliance upon Garcia v. Cecos Int'l, Inc., 761 F.2d 76, 82 (1st Cir. 1985), in support of their argument that had the notice letter more specific, the state would have "far more flexibility in determining how to bring itself into compliance when it's not being forced to defend itself in litigation," D. 107 at 39, also does not warrant a different result.  While the Court acknowledges the cited proposition in Garcia that "[a]fter the complaint is filed the parties assume an adversary relationship that makes cooperation less likely," id., the Court notes that the cooperation in this case seems to have already dissolved.  The Plaintiffs have filed suit because they concluded that the remedy the Defendants initially offered after the notice letter was not sufficient to resolve what they believe to be systemic flaws in the manner in which the NVRA is being implemented at public assistance agencies across the Commonwealth, D. 1 ¶ 39, and has continued even as the parties have settled certain aspects of their dispute.  D. 35-1.

For all of the reasons discussed above, the Court finds that the Plaintiffs' demand letter was sufficient to provide the Defendants adequate pre-suit notice.

**B.**      **The Court Allows Plaintiffs to Amend the Complaint**

In light of the ruling above that the pre-suit notice letter was sufficient, the Court rules below on the pending motions.

First, the Plaintiffs seek to (1) add as a Defendant Kristin Thorn, in her official capacity as Director of the Office of MassHealth and (2) add additional factual allegations to the

complaint concerning NVRA violations by the Office of MassHealth.  D. 62.  The NVRA directs

that each state "designate a State officer or employee as the chief State election official to be

responsible for coordination of State responsibilities under this subchapter." 42 U.S.C. § 1973gg-

8.  While it also permits a private right of action to proceed in federal court after such notice to

such chief election official, 42 U.S.C. § 1973gg-9(b), there is nothing in the NVRA that limits

such actions to proceeding solely against that official.[2]

    The Defendants argue that the Plaintiffs' motion to amend was unduly delayed and would

cause undue hardship to HHS.[3]  D. 73 at 10–14.  The parties, however, entered into a joint

scheduling agreement, providing that "[e]xcept for good cause show, no motions seeking leave

to add new parties or to amend the pleadings to assert new claims or defenses may be filed after

July 1, 2013."  See D. 37.  The Court subsequently adopted this provision of the parties' jointly

proposed schedule.  D. 36, 37.  Accordingly, the Court's scheduling order allow the Plaintiffs to

move to amend their complaint until July 1 and the Plaintiffs moved to amend their complaint on

June 24, 2013,  D. 62, within the time frame adopted by the Court.  Further, this case has not yet

been scheduled for trial, some discovery disputes remain, and the deadline for filing summary

judgment motions has not yet passed.  D. 37; see D. 111.

    While the Defendants also assert that adding the Office of MassHealth would "drastically

expand the scope of this litigation," D. 73 at 12, it is not clear that the parties had not already

anticipated, at least to some extent, that the Plaintiffs would seek to pursue action against this

---

[2]Here, the Plaintiffs addressed the demand letter to the chief election official, as required, but also copied on the letter the other named Defendants, including the HHS Secretary.  D. 1-1.

[3]The Defendants also argue that allowing the amended complaint would be futile because the Plaintiffs failed to issue pre-suit notice to the Office of MassHealth, as their notice letter "contained no reference whatsoever to MassHealth or the Office of Medicaid."  D. 73 at 5, 7.  As discussed above, the notice regarding Office of MassHealth claims was sufficient, and therefore, adding the Office of Medicaid as a Defendant and factual support for such claims in the complaint would not be futile.

party.  Some of the discovery as to this agency has been underway and, in fact, was one of the subjects of the instant motion to compel.  See D. 58; see also Plaintiffs' Requests for Production of Documents (D. 74-1); Notice of Deposition of HHS Secretary (D. 74-2 at 6) (including as deposition topics "EOHHS's administration of the Medicaid program through MassHealth, including but not limited to . . . whether, and if so how, voter registration services are contemplated within structure and oversight; and who has responsibility for voter registration services in any way" and "[w]hether, and if so how, voter registration services are offered during any MassHealth, Virtual Gateway or other Medicaid application, renewal, recertification, or change of address process . . .").

For the same reasons, and in light of the Defendants' same objections, the Court will also allow the Plaintiffs to add facts to their complaint alleging NVRA violations by the Office of MassHealth.  D. 62.

Finally, to the extent the Plaintiffs seek to amend the complaint to correct typographical and other formatting errors and to update the names of the named Plaintiffs' predecessors, the Court allows such amendment.  See D. 63 at 2, n. 2;  D. 62-1.

For these reasons, the Court ALLOWS the motion to amend.[4]

---

[4]The Defendants have also moved for leave to file a sur-reply brief in opposition to the Plaintiffs' motion to amend.  D. 89.  This brief raises only one issue – that the Plaintiffs did not comply with Local Rule 15.1(b) because they failed to properly serve the Office of MassHealth prior to filing the motion to amend.  D. 89-1.  The Court ALLOWS nunc pro tunc the motion for leave to file the sur-reply brief, D. 89.  To the extent the Defendants request that the Court deny the Plaintiffs' motion to amend on the grounds of improper service, the Court finds that the Plaintiffs' subsequent July 30, 2013 service, see D. 82, suffices, given that the Defendants have not asserted that late service caused them any prejudice, see D. 89-1, and the Court does not find any such prejudice exists in any event, for the reasons discussed above.

C. **The Court Denies the Motion for Judgment on the Pleadings**

The Defendants first argue that Delgado should be dismissed from the case because she did not provide pre-suit notice and because the Defendants have cured any alleged NVRA violations pertaining to her.  D. 76 at 6.  The Plaintiffs have now voluntarily moved to withdraw Delgado as a named Plaintiff.  D. 103.  The Court ALLOWS that motion, D. 103, and therefore finds that the issue of whether to allow claims brought by Delgado is moot.

The Defendants further argue that any allegations made with respect to both the Office of Medicaid and "remote transactions" should be dismissed because the Plaintiffs did not provide the Defendants with adequate pre-suit notice of these claims.  The Court has addressed this first issue above and addresses the second issue regarding "remote transactions" below and denies the motion on this basis.

Similarly, at the hearing, the Defendants argued in further support of the motion for judgment on the pleadings that because Delgado has withdrawn from the case, and since the only specific reference with respect to MassHealth was in reference to Delgado, the complaint has failed to state a claim in regard to MassHealth.  The Court concludes that the facts regarding Delgado, in addition to the additional facts and allegations added in the amended complaint regarding MassHealth, only provide further factual support for the claims already made in the complaint – that the Commonwealth has violated the NVRA by failing to comply with the statute at its public assistance agencies.  The Defendants do not appear to contend that the complaint's factual allegations are wholly inadequate.  See D. 76 at 5; D. 107 at 26.

Finally, in regard to the "remote transactions," the Defendants argue that the notice letter raises concerns only about in-person applications, and not "remote transactions," such as mail, telephone or internet transactions.  D. 76 at 8–9.  However, as the Defendants conceded at the

hearing, "there is a fundamental ambiguity in the statute" as to whether the NVRA actually intended to apply to remote transactions.  D. 107 at 37.  Given this admitted statutory ambiguity, it is not one to be decided at this juncture.[5]

### D.       The Court Orders the Defendants to Produce the Requested Documents Pertaining to Public Assistance Agencies

In light of the above decisions, the Court turns to the Plaintiffs' motion to compel, D. 58. The Plaintiffs move the Defendants to produce documents responsive to their First Set of Requests for Production of Documents.   D. 58.   The Plaintiffs seek documents containing information concerning NVRA violations at the Office of MassHealth and documents reflecting communications between the Secretary and other agencies regarding NVRA compliance.[6]  D. 59 at 2.

#### 1.       Documents Related to MassHealth are Relevant

The only basis for the Defendants' objection to the MassHealth documents is that they were not provided adequate pre-suit notice of claims regarding the Office of MassHealth.  D. 66 at 7–14.  As discussed above, the Court has rejected the Defendants' position in this regard. Accordingly, the Court finds that the requested documents, which relate to NVRA violations by the Office of MassHealth, are relevant to the Plaintiffs' claims and therefore ALLOWS the motion to compel production of these documents.

#### 2.       The Secretary's Documents Reflecting Communications with Agencies

---

[5]Because the Court denies the motion for judgment on the pleadings on substantive grounds, it need not examine the Plaintiffs' timeliness argument.  See D. 86 at 9–10.

[6]While the Plaintiffs' motion also seeks communications sent or received from January 1, 2008 through January 1, 2010, the Court understands that the parties have resolved this issue and need not address it.  D. 66 at 2, n. 1.

For the same reasons discussed above, the Court rejects the Defendants' argument that the Secretary need not produce documents related to agencies other than the DTA on the basis that the notice letter was not sufficient.   At the hearing and in their papers, the Plaintiffs represented to the Court that they seek only documents regarding NVRA compliance at approximately six public assistance voter registration agencies for which the Secretary is statutorily obligated to ensure compliance with the NVRA; they further represent to the Court that they seek only those documents located within the Secretary's own files and do not request that the Secretary search the files of every public assistance agency in his purview.  D. 59 at 13, n.8; D. 107 at 19.  The Court however, agrees with the Defendants to the extent they argue that documents regarding voter registration agencies that are not public assistance agencies, such as the RMV, are not relevant and, therefore, the motion to compel is DENIED to the extent that it seeks RMV documents.   The Plaintiffs argue that the requested documents are relevant for comparing the Secretary's "oversight of voter registration efforts at the Registry of Motor Vehicles with the Secretary's oversight at public assistance agencies" and in fashioning a remedy.  D. 59 at 13.  The parties do not dispute that the NVRA has a completely distinct set of requirements for the RMV, which do not reflect on the requirements for public assistance agencies.   The Court finds that allowing the Plaintiffs to obtain documents outside of those pertaining to NVRA violations at public assistance agencies stretches beyond the scope of what is relevant to the Plaintiffs' claims.   Therefore, the Court ALLOWS IN PART the Plaintiffs' motion to compel to the extent that it seeks documents reflecting the Secretary's communications with public assistance agencies' NVRA violations and compliance.[7]

---

[7]The Court ALLOWS *nunc pro tunc* the Plaintiffs' motion for leave to file a reply in support of the motion to compel, D. 78.  The Court considered the proposed reply, D. 78-1, in resolving the motion to compel.

**VI.     Conclusion**

For the above reasons, the Court ALLOWS the motion to amend the complaint, D. 62;

DENIES the Defendants' motion for judgment on the pleadings, D. 75;  ALLOWS IN PART and

DENIES IN PART the motion to compel, D. 58; and ORDERS that:

1. The Defendants produce the requested documents regarding the Office of MassHealth and records regarding the Secretary's communications with other public assistance agencies about NVRA violations and compliance; and

2. The Plaintiffs file within seven days an amended complaint that complies with this Order.

The Court ALLOWS the Plaintiffs' motion to withdraw Delgado as a named Plaintiff, D.

103, and ALLOWS *nunc pro tunc* the Plaintiffs' motion for leave to file a reply in support of the

motion to compel, D. 78, and the Defendants' motion to file a sur-reply to the motion to amend,

D. 89.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge